UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                                                        Civil No. 1:22-cv-01229

vs.

$16,171.00 UNITED STATES CURRENCY,

      Defendant.
_____/

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

NOW COMES Plaintiff, United States of America, by and through its attorneys, Mark A. Totten, United States Attorney for the Western District of Michigan, and Daniel T. McGraw, Assistant United States Attorney, and states upon information and belief that:

**NATURE OF THE ACTION**

1. This is a civil forfeiture action filed pursuant to 21 U.S.C. § 881(a)(6) and Supplemental Rule G(2) of the Federal Rules of Civil Procedure to forfeit and condemn to the use and benefit of the United States of America $16,171.00 in United States Currency (the "Defendant Currency").

**THE DEFENDANT IN REM**

2. The Defendant Currency consists of $16,171.00 in United States currency that was seized on or about July 7, 2022 by the Drug Enforcement Administration (DEA) in Muskegon County, Michigan. The Defendant Currency is currently in the custody of the United States Marshal Service (USMS).

## JURISDICITON AND VENUE

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1345 and 1355(b)(1)(A) because this action is being commenced by the United States of America as Plaintiff and the acts giving rise to the basis for forfeiture occurred in this judicial district.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to forfeiture occurred in this judicial district, and/or pursuant to 28 U.S.C. § 1395(b) because the Defendant Currency was found within this judicial district.

## BASIS FOR FORFEITURE

5. As set forth below, the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes (1) money, negotiable instruments, securities, and other things of value furnished or intended to be furnished in exchange for a controlled substance; and/or (2) proceeds traceable to such an exchange; and/or (3) money, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. §§ 841, 846.

## FACTS SUPPORTING FORFEITURE

*Claimant's Prior Federal Drug Trafficking Conviction and Supervised Release*

6. On November 21, 2012, Kenneth Lee Lang-Knight (Claimant) was sentenced to 72 months in prison for conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(ii), and possession

with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), followed by 5 years of supervised release. *See United States v. Kenneth Lee Lang-Knight*, No. 1:12-CR-00123-JTN (W.D. Mich.).

7.  On August 11, 2017, Claimant's 5-year period of supervised release began, with an expiration date of August 10, 2022.

8.  While on supervised release, Claimant was subject to various mandatory and standard conditions, like not committing another crime, and various special conditions, like substance abuse testing and treatment.

9.  Between November 2017 and April 2021, Claimant violated the conditions of supervised release four times in the following ways:

    a. On November 9, 2017, the Court added Special Condition 7, requiring Claimant to serve three consecutive weekends of intermittent confinement for using cocaine.

    b. On June 19, 2019, the Court added Special Condition 8, requiring Claimant to serve 120 days in a residential reentry center after Claimant failed to report loss of employment, failed to follow instructions of the probation officer, and failed to make himself available for community supervision.

    c. On December 10, 2020, the Court revoked Claimant's supervised release and imposed 3 months of home detention with location monitoring, in addition to other special conditions, after Claimant was found guilty of leaving the judicial district without permission, associating with a convicted felon without permission, and failing to report police contact.

    d. On April 22, 2021, the Court took no action after Claimant possessed two bottles of alcohol.

*DEA Investigation into Claimant's Drug Trafficking in Muskegon*

10. In 2019, the DEA and Michigan State Police (MSP) started investigating Claimant and his associates for drug trafficking offenses in and around Muskegon

3

County, Michigan. Evidence indicated Claimant and his associates distributed large quantities of fentanyl, methamphetamine, and cocaine in this judicial district, which they obtained from sources of supply in other states.

11. In September 2020, Illinois State Police stopped a Nissan Pathfinder for driving too close to the vehicle in front of it. Inside the vehicle, officers found Claimant driving the vehicle, and also found two other individuals, including Claimant's girlfriend, riding in the vehicle as passengers. The vehicle was rented in the girlfriend's name. After a narcotics K-9 alerted on the vehicle, officers found $239,000 in U.S. currency in vacuum sealed bundles hidden inside both rear passenger doors. Claimant and the other two passengers denied any knowledge of the currency.

12. Beginning in March 2022, investigators obtained evidence that Claimant and other associates, including Saul Briggs (Claimant's co-defendant in his 2012 criminal case), were using a house at 2060 Letart Avenue in Muskegon as a drug stash house (the stash house). Based on surveillance, a pattern began to emerge between April and June 2022. In each of those months, investigators saw an individual bring a large, brown box, similar in size to a TV box, to the residence and then take the box inside. Each month, after the box's arrival, investigators observed an increase in short-stay traffic at the Letart residence by numerous individuals, including Claimant. Frequently, after the boxes were delivered, Claimant would arrive at the stash house, go inside for a brief period of time, and then come outside and open the hood of his vehicle as if he was putting something under the hood. Specifically, agents observed via pole camera Claimant at the rear of the stash house

approximately nine days in April, nine days in May, and five days in June. During those visits, agents also saw Claimant put something under the hood of his vehicle eight times in April, seven times in May, and one time in June.

13. According to a GPS tracker that agents had on Claimant's vehicle, Claimant was in fact at the stash house almost every day during this period, often using the front entrance, which was not visible on the pole camera.

14. Also in March 2022, investigators intercepted wire communications between Claimant, Briggs, and a Springfield, Missouri-based drug trafficker named Cameron Hathorn.

15. Investigators monitored Hathorn via electronic surveillance as he drove from Missouri to Michigan, arriving on March 29, 2022. After he arrived, Hathorn called Claimant and discussed Claimant supplying Hathorn with a half-kilogram of fentanyl for $25,000. The next day, investigators saw Claimant leave his residence at 1914 Wood Street in Muskegon and go to the stash house on Letart, where he stayed for a brief period of time before driving back to his residence on Wood Street. Investigators then intercepted another call between Claimant and Hathorn where Hathorn told Claimant he was "in front" of "the wood," a reference to Claimant's residence.

16. Within minutes of that intercepted call, investigators observed Claimant emerge from the back of his residence, walk across the street in a manner consistent with him carrying something in his hoodie pocket, and get into the driver side rear door of Hathorn's vehicle, where he stayed for only approximately 25

5

seconds. Claimant then got out of Hathorn's vehicle and walked quickly back across the street into the front door of his residence. Hathorn then left the area.

17. On June 14, 2022, electronic surveillance showed Claimant arrive at the stash house and stay for a period of time. The following day, on June 15, 2022, investigators executed a search warrant at the stash house after they saw Briggs arrive and go inside. When investigators entered the house, Briggs ran out the back door and was eventually detained by investigators.

18. Inside the stash house, investigators found almost eight kilograms of fentanyl and/or heroin, more than 750 grams of black tar heroin, approximately 61 grams of cocaine, and approximately 22 grams of methamphetamine. Investigators also found firearms, multiple digital scales, baggies, rubber gloves, presses used to package drugs for sale, cutting agents, blenders with apparent drug residue, and a money counter. Investigators also found large brown boxes, similar in size and shape to the boxes previously observed being delivered to the residence in April, May, and June 2022, in various locations throughout the house.

19. Upon information and belief, Claimant was a high-ranking member of this drug trafficking organization in Muskegon, who had a source of supply for drugs in California.

*Search of Claimant's Residence and Seizure of the Defendant Currency*

20. On July 7, 2022, U.S. Probation Officers searched Claimant's residence at 1914 Wood Street in Muskegon pursuant to the conditions of his supervised release. During the search, officers found the Defendant Currency.

21. A portion of the Defendant Currency, $2,140.00 total, was located within eight envelopes, and each envelope had "Ken Knight" or "Kenneth Knight" written on the corner, found in the drawers of a dresser within the master bedroom. The remainder of the Defendant Currency, $14,031.00, was found in a purse on the ground between the bed and the wall of the master bedroom. The total amount seized was $16,171.00 in U.S. currency. An additional $407, comprised mostly of one-dollar bills, was found inside a bag, but was not seized.

22. Claimant was employed at a "Lids" store owned by D.C. in a Muskegon mall for $15 per hour. By early July 2022, Claimant had worked approximately 420 hours in 2022, earning total gross pay of $4,080.00 and total net pay, after taxes, of $3,358.27.

23. On or about July 3, 2022, just a few days before his residence was searched and the Defendant Currency was seized, Claimant wagered a total of at least $10,800 U.S. currency at the Gun Lake Casino sportsbook. The same date, Claimant was paid out $33,435.51 U.S. currency in winnings.

24. Upon information and belief, the proceeds of drug trafficking, or proceeds intended to facilitate drug trafficking, in the form of U.S. currency, can be brought into and used to make wagers at casinos, without any documentation required. Any winnings are then documented through the casino on payout receipts or bet slips. This is a well-known process called "cleaning" dirty money or drug-trafficking proceeds.

25. Upon information and belief, the Defendant Currency is money

furnished, or intended to be furnished, in exchange for a controlled substance, constitutes the proceeds of drug trafficking, and/or was being used to facilitate or intended to be used to facilitate violations of 21 U.S.C. §§ 841 and 846.

### CLAIM I

26. Plaintiff hereby re-alleges paragraphs 1 – 25, as referenced above.

27. The Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. Chapter 13, Subchapter I.

### CLAIM II

28. Plaintiff hereby re-alleges paragraphs 1 – 25, as referenced above.

29. The Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds traceable to an exchange of controlled substances in violation of 21 U.S.C. Chapter 13, Subchapter I.

### CLAIM III

30. Plaintiff hereby re-alleges paragraphs 1 – 25, as referenced above.

31. The Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money used or intended to be used to facilitate a violation of 21 U.S.C. Chapter 13, Subchapter I.

### REQUESTED RELIEF

Wherefore, the United States requests that the Court issue a warrant for the arrest of the Defendant Currency; that due notice be given to all interested parties to

appear and show cause why forfeiture to the United States of America should not be decreed; and that the Defendant Currency be condemned and forfeited to the United States of America and be delivered into the custody of the Drug Enforcement Administration for disposition according to law; and for such other relief as this Court may deem just and proper.

MARK A. TOTTEN
United States Attorney

Dated: December 27, 2022

DANIEL T. McGRAW
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

## VERIFICATION

I am a Special Agent of the Drug Enforcement Administration with personal involvement in this investigation.

I have read the contents of the foregoing Verified Complaint for Forfeiture In Rem, and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 27, 2022

                                                HEATHER WILLIAMSON
Special Agent
Drug Enforcement Administration